United States District Court
Southern District of Texas
**ENTERED**
April 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALTON WILLIAMS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H- 17-1061 |
| § | |
| KILOLO KIJAKAZI, Acting Commissioner § | |
| of the Social Security Administration, § | |
| § | |
| *Defendant*. § | |

## ORDER

Pending before the court is a motion for attorney's fees filed by counsel for plaintiff Alton Williams, Jr. Dkt. 22. After considering the motion, response by the acting Commissioner of Social Security, supplemental brief, and applicable law, the court is of the opinion that the motion should be GRANTED.

### I. BACKGROUND

Williams is Veteran who served in the Navy for fifteen years. Dkt. 17. He was diagnosed with post traumatic stress disorder and found to be 100% disabled by the Department of Veterans Affairs ("VA"). *Id.* He was also having various physical problems with his joints, back, neck, wrist, knee, and foot. *Id.* He applied for disability insurance benefits from the Social Security Administration in 2015 and asserted that he had been unable to work since June 30, 2014. *Id.* Williams had a hearing in front of an Administrative Law Judge ("ALJ"), and the ALJ issued an unfavorable opinion. *Id.* The ALJ recognized that Williams suffers from PTSD and was obese, but the ALJ found that the record did not support the Williams's assertions of physical limitations relating to his neck, back, knee, elbow, wrist, and headaches. *Id.* The ALJ determined that

Williams was capable of performing medium work and could perform jobs such as laundry worker, hand packager, or kitchen helper.  *Id.*

Williams appealed the unfavorable decision, and the Appeals Council denied a request for a review.  *Id.*  Williams then sought judicial review by this court.  *Id.*  The parties filed competing motions for summary judgment, which this court referred to the Magistrate Judge.  The Magistrate Judge noted, in a very thorough 43-page memorandum and recommendation, that the ALJ had only mentioned the finding by the VA that Williams is 100% disabled once in his opinion and then did not discuss the finding.  *Id.*  The ALJ did not set forth valid reasons for failing to give the VA disability finding "great weight" as required by caselaw.  *Id.*  The Magistrate Judge determined that this constituted reversible error and recommended remand.  *Id.*  This court agreed and remanded the case for the ALJ to consider the VA disability rating.  Dkt. 18 (district court order adopting the Magistrate Judge's recommendation).

After the case was remanded back to the ALJ, Williams's counsel, James Foster Andrews, filed a motion for attorney's fees in this court pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Dkt. 19.  Andrews sought fees at the rate of $190.62 per hour, which is the statutory rate under the EAJA plus enhancements for inflation.  *Id.*  He noted that he has been practicing law for 41 years with a concentration in Social Security Disability for the last 39 years.  *Id.*  The court granted Andrews's motion for fees and awarded $8,027.50 pursuant to the EAJA.  Dkt. 21.

After remand, Andrews continued to represent Williams.  The Social Security Administration ultimately determined that "there are no jobs in the national economy that [Williams] could perform" and that he had been under a disability since June 30, 2014.  Dkt. 22, Ex. A (ALJ decision after remand).  Williams's past-due benefits were $114,024, and his first

2

payment, which included the back pay, was $90,009.50. Dkt. 22, Ex. B (Social Security Administration Notice of Award). The Social Security Administration stated that it was withholding $28,506 from the past-due benefits to pay Williams's representative's fees, and it advised Williams that the fee was between him and his representative, but the representative could not charge more than 25 percent. *Id.* It noted that it had approved the fee agreement, which provided for $6000 to be paid to Andrews, and that it is was withholding the remaining $22506 in case Andrews asked this court to approve fees for work done in federal court.[1] *Id.*

Andrews filed the instant motion in this court seeking an award of 25 percent of Williams's back pay. Dkt. 22. He attached the contingency fee agreement he had with Williams, and he states that he will refund the $8,027.50 EAJA award to Williams once he has received a fee award from his court. *Id.* Andrews also attached a document that Williams signed on January 25, 2022, in which Williams agrees that his counsel is owed 25 percent of Williams's back pay award. Dkt. 22, Ex. F.

In response to the motion, the acting Commissioner of Social Security noted that neither she nor the government has a stake in the outcome and that the Commissioner plays the role of a trustee to the claimant. Dkt. 23. She sets forth the law and advises the court that it must determine whether counsel's rate, which is about three times the hourly rate he received under the EAJA, is a windfall and thus not reasonable under § 406(b). Dkt. 23. The Commissioner did not point to any flaws in the contingency fee agreement. *See id.*

The court, however, ordered the parties to provide more briefing on whether the contingency fee agreement and subsequent agreement by Williams that his counsel was entitled to

---

[1] Andrews states that he has already been paid $5,896, which is the $6000 in the fee agreement minus a $104 administrative fee. Dkt. 22.

3

recover 25 percent of his back due benefits allowed for such a recovery. Dkt. 24. Andrews provided a short brief, but the Commissioner failed to provide the additional briefing the court requested. *See* Dkt. 25.

The court will first briefly review the law related to fees and then consider whether Andrews is entitled to the 25 percent he requests.

## II. Legal Standard

The Social Security Administration currently is withholding 25 percent of Williams's past-due benefits pursuant to § 206(B) of the Social Security Act. *See* Dkt. 22, Ex. B. Under § 206(B), "Whenever a court renders a judgment favorable to a claimant under this title who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . ." 42 U.S.C. §406(b)(1)(A). This provision "does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefit claimants in court," but rather "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807, 122 S. Ct. 1817 (2002). This independent check is, of course, subject to the "one boundary line" in the statute—a 25 percent cap. *Id.* If an attorney requesting court-awarded fees pursuant to a contingency fee agreement previously received EAJA fees, the attorney must refund the smaller fee to the claimant. *See id.* at 796.

The court must determine whether a fee requested in a Social Security disability case under the contingency agreement is reasonable or constitutes a windfall. *Gisbrecht*, 535 U.S. at 808. In considering whether it is a windfall, the court may consider "whether an attorney's success is

4

attributable to his own work or instead to some unearned advantage for which it would not be reasonable to compensate him." *Jeter v. Astrue*, 622 F.3d 371, 380 (5th Cir. 2010). The fact that an award "may mathematically seem like a high fee award" compared to hours spent, the court must keep in mind that an attorney may be able "to accomplish a great deal in a small window of time." *Id.* at 381. Courts may consider factors such as "risk of loss in the representation, experience of the attorney, percentage of the past-due benefits the fee constitutes, value of the case to a claimant, degree of difficulty, and whether the client consents to the requested fee." *Id.* at 382 (cleaned up). While it is impermissible to rely solely on a lodestar calculation[2] in determining the reasonableness of fees pursuant to a contingency fee agreement in Social Security disability cases, "courts may consider the lodestar in their analyses so long as [a court concluding the fee is a windfall] can articulate additional factors demonstrating that the excessively high fee would result in an unearned advantage." *Id.* at 380. The lodestar "alone cannot constitute *the* basis of an 'unreasonable' finding." *Id.* at 381.

### III. ANALYSIS

Section 406(b) "calls for court review" of contingency fee agreements in Social Security disability cases "as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht*, 535 U.S. at 807. The U.S. Supreme Court instructs that courts must look first at the agreement. *Id.* at 808. The relevant portion of the agreement provided to the court in this case is set forth below:

---

[2] The lodestar is a method of calculating reasonable attorneys' fees in which "the district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers" and then "multiply the reasonable hours by the reasonable hourly rate. . . . The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

> A. In the event of a favorable determination before the Social Security Administration at any stage, the fee shall be the **LESSER** of:
> 1. Twenty-five (25%) of the past-due benefits of the client and his/her family; or
> 2. Six Thousand and 00/100 Dollars ($6,000.00). NOTE: In the event the Social Security Administration increases the $6,000 figure, the parties agree to this increase.
>
> Notwithstanding the foregoing, the client, within fifteen (15) days after notice, can request a reduced fee and the attorney, within fifteen (15) days after notice, can request an increased fee, as is allowed by law. [See 42 USCS 406(a)(3)(A).]

Dkt. 22, Ex. 5 (bracketed text in original). The plain language of sections A(1) and A(2) of this agreement indicates that the maximum amount the plaintiff can receive pursuant to the contingency fee agreement, absent modification, is $6,000. Since the 25 percent Andrews now seeks is significantly more than this, the court asked the parties to prepare additional briefing addressing this issue. Dkt. 24. Andrews asserted in his supplemental brief that the fee agreement "envisioned a scenario that does not cap the fee at $6,000," citing the "notwithstanding" sentence after paragraph A in the agreement.[3] Dkt. 25.

If one considers only the text of the "notwithstanding" sentence, absent the citation that is provided directly after the sentence in the agreement, it appears that either party can request a change in the fees within fifteen days of notice of a decision—though there is no indication if this request is just made between the parties or if another entity is involved. The citation, however, clarifies this. The citation is to 42 U.S.C. § 406(a)(3)(A), which states:

---

[3] Andrews also respectfully advised the court in his supplemental briefing that two other courts had approved fees of 25 percent under this agreement, and he cited *Steele v. Saul*, No. 4:17-cv03539, Dkt. 24 (S.D. Tex. Sep. 14, 2020) (Stacy, J.). In *Steele*, Judge Stacy very thoroughly addressed how courts determine if a 25 percent fee is reasonable. She did not, however, address the terms of the contingency fee agreement. *See id.* Thus, her analysis is *Steele*, while helpful in providing an overview of the law, is not helpful in determining the issues this court requested the parties to address in their supplemental briefs.

> (A) The Commissioner of Social Security shall provide by regulation for review of the amount which would otherwise be the maximum fee as determined by paragraph (2) if, within 15 days after receipt of the notice provided pursuant paragraph (2)(D)—
>> (i) The claimant, or the administrative law judge or other adjudicator who made the favorable determination, submits a written request to the Commissioner of Social Security to reduce the maximum fee, or
>> (ii) The person representing the claimant submits a written request to the Commissioner of Social Security to increase the maximum fee.
>
> Any such review shall be conducted after providing the claimant, the person representing the claimant, and the adjudicator with reasonable notice of such request and an opportunity to submit written information in favor of or in opposition to such request. The adjudicator may request the Commissioner of Social Security to reduce the maximum fee only on the basis of evidence of the failure of the person representing the claimant to represent adequately the claimant's interest or on the basis of evidence that the fee is clearly excessive for services rendered.

The paragraph (2) discussed in paragraph (3)(A) is about permissible contingency fee agreements, including required caps, in cases considered by the Commissioner of Social Security. *See* § 406(a)(2). Thus, this citation clarifies that the "notwithstanding" sentence does not apply to fee requests for representation in federal court. Moreover, even if the plain language of the "notwithstanding" sentence were clear without referring to the citation, and the court must consider this citation because otherwise it would be rendered mere surplusage. Under Texas law, contracts must be interpreted to avoid surplusage. *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014). Section 406(a)(3)A) relates to notice to the Commissioner of Social Security for fees for representation before the Commissioner, not the fees for the court, which are addressed in 42 U.S.C. § 406(b). *See Gisbrecht*, 535 U.S. at 805 (referring to § 406(a) as "the provision governing fees for agency-level representation"). Thus, this agreement taken in isolation does not support the fee award Andrews now seeks.

However, Andrews also points out that the week after the award, he conferred with Williams regarding the increased fee and Williams "readily agreed." Dkt. 25. Andrews notes that Williams has received over $100,000 in back due benefits and that Andrews is not even requesting additional fees for benefits that will accrue for Williams's children, which exceed $50,000. *Id.*

The subsequent agreement to which Andrews refers is the document Williams signed on January 25, 2022. Dkt. 22, Ex. F. In this document, Williams agrees as follows:

> I agree that my attorney, James F. Andrews, is entitled to 25% of the back due benefits amounting to $28,506.
>
> I also understand that Mr. Andrews will reimburse me the sum of $8,027.50 as Equal Access to Justice Act Fees that was paid to Mr. Andrews in 2018. That reimbursement will occur upon Mr. Andrews' receipt of the sum of $28,506.

Dkt. 22, Ex. F. When the court requested additional briefing, it specifically asked the parties to brief the impact of this subsequently signed document, but Andrews's only discussion of this impact is to state that the plaintiff agreed to the increase, which Andrews asserts it pursuant to the "notwithstanding" section of the original contingency fee agreement. Dkt. 25. However, since the court interprets the notwithstanding language as inapplicable in this situation, the January 25 document can only be enforced if it is a valid modification of the previous agreement.

Under Texas law, a modification of a contract "must satisfy the elements of a contract: a meeting of the minds supported by consideration." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). The parties have not discussed modification, but after a review of the document Williams signed on January 25, 2022, the court finds that it satisfies the commonly known requirements of a modification. There appears to be a meeting of the minds with regard to how much money Andrews now seeks, which is clearly set forth in the agreement, and the return of the fees already paid is, though a small amount in comparison, consideration. *See* Dkt. 22, Ex. F. No party has argued that the agreements in this case do not allow Andrews to receive 25 percent,

8

including the Commissioner which noted that it acts as a trustee for Williams. The court will therefore enforce the January 25 document as a modification.

The court must consider whether 25 percent of Williams's backpay is a reasonable amount for Andrews's work in this court or whether it constitutes a windfall. As the Commissioner pointed out in her response to the motion, if one were to calculate the hourly rate based on the records counsel submitted, the rate would be $674.70, which is no doubt a very high rate. Dkt. 23. However, while Fifth Circuit precedent allows the court to consider whether the hourly rate is reasonable the same way it would when calculating the lodestar, the lodestar cannot be the sole consideration. *See Jeter*, 622 F.3d at 380. The court must be able to articulate why this rate would be a windfall for other reasons, and it cannot. Andrews appealed an unfavorable decision to federal court, risking no fees, and the Magistrate Judge's 43-page memorandum and recommendation granted in part and denied in part competing motions for summary judgment and remanded the case to the Commissioner for further consideration. Dkt. 17. It is not a run-of-the-mill case, and counsel, who is very experienced with this type of case, obtained a good result for his client—a client who otherwise would not have received any benefits. Andrews is seeking 25 percent of Williams's back pay, but he does not request any percentage of the funds the children are receiving that also resulted from his work, and Williams agrees that his counsel was entitled to 25 percent of his backpay. The court thus finds that, under Fifth Circuit law, the amount requested is reasonable.

The court notes that the statute allows for 25 percent of the past-due benefits, and that the Social Security Administration withheld 25 percent pending this court's decision on fees. *See* Dkt. 22, Ex. B. However, the Social Security Administration paid Andrews $6,000 out of that withheld amount for his work at the agency level. *See id.* This raises the question: Does the 25

9

percent cap apply to the aggregate award at both the agency and court levels? It does not. The statute addresses fees for court representation and agency representation separately; "the amount of past-due benefits that the agency can withhold for direct payment does not delimit the amount of fees that can be approved for representation before the agency [under § 406(a)] or the court [under § 406(b)]." *Culbertson v. Berryhill*, 139 S. Ct. 517, 523 (2019). The fees for representation at the federal court level are capped at 25 percent of the past-due benefits, and this amount is not reduced by the amount awarded at the agency level. *Id.* (analyzing the plaint language of the statutory text). Thus, even though the remaining funds held by the Social Security Administration are $22,506 ($28,506-$6,000), Andrews seeks $28,506, which represents the full 25 percent of Williams's past-due benefits. Williams agreed to this full statutorily-approved amount, and that is the amount the court awards.

## IV. CONCLUSION

The motion for fees (Dkt. 22) is GRANTED. The court hereby AWARDS fees to Andrews in the amount of $28,506. Andrews is ORDERED to return the $8,027.50 that he received in EAJA fees to his client.

Signed at Houston, Texas on April 4, 2022.

_____
Gray H. Miller
Senior United States District Judge